NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4399-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JULIAN B. HAMLETT,

    Defendant-Appellant.

---

APPROVED FOR PUBLICATION

March 3, 2017

APPELLATE DIVISION

---

Submitted February 15, 2017 — Decided March 3, 2017

Before Judges Fuentes, Simonelli and Carroll.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment Nos. 12-01-0168 and 12-12-2826.

Joseph E. Krakora, Public Defender, attorney for appellant (Lauren S. Michaels, Assistant Deputy Public Defender, of counsel and on the brief)

Christopher S. Porrino, Attorney General, attorney for respondent (Garima Joshi, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

CARROLL, J.A.D.

On September 7, 2011, Atlantic City police charged defendant Julian B. Hamlett with a number of drug offenses following the warrantless search of a rental car he was driving.

After his motion to suppress the drug evidence was denied, defendant pled guilty on April 16, 2013, to count six of Atlantic County Indictment No. 12-01-0168 charging him with third-degree possession with intent to distribute heroin within 1000 feet of school property, N.J.S.A. 2C:35-7.

In a separate incident, on August 7, 2012, Atlantic City police stopped defendant's car and, after discovering drugs, obtained a warrant to search his motel room in Galloway Township, where additional drugs and a handgun were recovered. Defendant moved to suppress the evidence found in the motel room, which the trial court denied. On December 9, 2013, defendant pled guilty on Atlantic County Indictment No. 12-12-2826 to count two, second-degree possession with intent to distribute heroin, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(2), and count seven, second-degree possession of a weapon by a convicted felon, N.J.S.A. 2C:39-7. Defendant also pled guilty to count four of a third, unrelated indictment, No. 12-11-2612, charging him with second-degree possession with intent to distribute heroin, N.J.S.A. 2C:35-7.1.[1]

On January 24, 2014, defendant was sentenced on all three indictments to an aggregate fourteen-year prison term with an eight-year period of parole ineligibility. In this appeal that

[1] Indictment No. 12-11-2612 is not at issue in this appeal.

followed, defendant challenges the denial of his two suppression motions. With respect to the September 7, 2011 incident, defendant argues that the officer improperly searched the center console while looking for the vehicle's registration and rental agreement. Defendant separately challenges the August 2012 search of his Galloway Township[2] motel room on the basis that it was improperly issued by an Atlantic City municipal court judge. Upon our review, and in light of the record and applicable legal standards, we affirm both orders.

I.

We glean the following facts from the record of the two suppression hearings.

The September 7, 2011 Traffic Stop

On September 7, 2011, at approximately 4:30 p.m., Detective Jeremy Narenberg of the Atlantic City Police Department (ACPD) directed Officer Charles Heintz to stop a tan 2011 Chevy Malibu with Pennsylvania license plates. Narenberg did not provide a reason for this request. Heintz located the vehicle and observed its driver commit two motor vehicle violations. Heintz stopped the car and asked defendant to produce his license, registration, and proof of insurance. Defendant explained that

---

[2] Galloway Township is a neighboring municipality of Atlantic City.

the car was rented by his girlfriend, Ms. Boyd. He was unable to produce his driver's credentials and instead provided Heintz with an expired state-issued identification card. Defendant looked in the car's glove compartment for additional documentation, but found only an owner's manual. Heintz did not believe defendant was under the influence, but he testified he saw a half-empty bottle of vodka on the car's back seat, and smelled an odor of burnt marijuana emanating from the car's interior.

Defendant requested permission to call Boyd in an attempt to locate the necessary documents. Heintz allowed defendant to do so. Although defendant's cell phone was plainly visible on the passenger seat, Heintz observed defendant quickly open and shut the car's center console. By this time, two other officers had arrived on the scene. The officers ordered defendant not to make any other sudden movements.

Defendant then used his cell phone, ostensibly to call Boyd. The officers did not listen to defendant's conversation, and did not know who, if anyone, defendant actually spoke to. Defendant informed the officers that Boyd was on her way, but he did not estimate how long it would take her to arrive.

Following the phone call, Heintz inquired as to the whereabouts of the vehicle's rental agreement. Defendant

replied he was unaware of its location, or whether it included his name. Because defendant was unable to produce a valid driver's license, Heintz ordered him out of the car. He then patted defendant down for weapons, found none, and placed defendant on the curb. In an effort to avoid unnecessarily prolonging the stop, Heintz searched for the vehicle's credentials in the side visor and glove compartment, and in an open compartment located near the gear shifter. Heintz then opened the center console, where he observed 7.25 grams of cocaine, two bricks of heroin, 98.6 grams of marijuana, and $2,595 in cash. Defendant was arrested, and a search of his person revealed a bag containing additional marijuana, cocaine, and heroin.

On April 12, 2013, Judge Max A. Baker denied defendant's motion to suppress the drugs. Citing defendant's movements in the car, including his quick closing of the center console without looking through it, and his inability to produce valid credentials, Judge Baker determined that Heintz reasonably conducted a limited search of the vehicle for documents. The judge found:

> [Heintz went] into the car and he searche[d] those places where it's reasonable to believe that the papers would be. He [didn't] look underneath the seat . . . because that's not where somebody would keep rental papers. It seems reasonable . . .

that somebody would keep rental papers in a center console[.]

Judge Baker concluded that upon lawfully searching the console for documents, Heintz observed the drugs in plain view, and thereafter discovered additional contraband while validly searching defendant incident to his arrest.

### The August 2012 Motel Room Search

On August 7, 2012, ACPD Officers James Karins and Anthony Abrams observed a grey Acura with tinted windows traveling at a high rate of speed. Defendant was the vehicle's driver and sole occupant. The officers pulled defendant over and noticed a strong odor of burnt marijuana emanating from his vehicle. Defendant was administered Miranda[3] warnings and placed under arrest.

Defendant consented to the officers' request to search the Acura.[4] This led to the discovery of marijuana, methamphetamines, and a key to Room No. 114 at the Passport Inn Suites, a motel in Galloway Township. Defendant then admitted to having a firearm and a large amount of contraband in his motel room. Abrams called the Passport Inn Suites motel and

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] Defendant does not challenge the consent search of the Acura on appeal.

confirmed defendant was staying in Room No. 114. He thereafter obtained approval from the on-call narcotics assistant prosecutor to apply for a warrant to search the motel room.

At approximately 4 a.m. on August 8, 2012, Abrams presented the warrant application to the on-call municipal court judge for Atlantic City. In his supporting affidavit, Abrams detailed his experience in narcotics and weapons investigations, as well as his then current assignment with the ACPD's Tactical Operations Unit. Abrams also noted his interactions with defendant, including defendant's statements that he had a large amount of heroin and methamphetamines and a firearm in his Galloway Township motel room.

Prior to the offense at issue, Atlantic County Assignment Judge Julio L. Mendez issued an order (the cross-assignment order) directing the cross-assignment of municipal court judges in the event of a judge's unavailability for a matter requiring immediate judicial action. The cross-assignment order, issued pursuant to N.J.S.A. 2B:12-6 and Rule 1:12-3, directed that an applicant "shall only contact an Acting Municipal Court Judge listed on the attached Rider upon determining that the Municipal Court Judge duly appointed for that court is disqualified from acting, has an inability to hear the matter, or is otherwise unavailable[.]" The cross-assignment order further instructed

that an applicant "shall apply to the Acting Municipal Court Judges in the sequence as listed on the attached Rider[]" and that "the Acting Municipal Court Judge shall make a record of the reason the application for judicial action is not being made to the duly appointed Municipal Court Judge for that court[.]" On the 2012 Rider, the Atlantic City municipal judge was listed seventh for Galloway Township.

Notwithstanding the existence of the cross-assignment order, the Atlantic City municipal judge did not inquire why Abrams failed to apply to the Galloway Township judge. Instead, the judge read Abrams's affidavit, determined that it satisfactorily established probable cause, and approved the warrant. The police then searched defendant's motel room where they recovered additional drugs and a weapon.

Abrams testified at the suppression hearing that this was his first matter involving a jurisdiction other than Atlantic City. He explained that he felt an Atlantic City judge was the appropriate magistrate to consider his warrant application because the matter itself originated in Atlantic City. He further testified he was not motivated to consult the Atlantic City judge because of a special relationship with him; rather, he was simply the on-call municipal court judge in Atlantic City at the time.

Judge Albert J. Garofolo denied defendant's motion on November 22, 2013. In his cogent written opinion, the judge found no reason to question Officer Abrams's credibility. He noted:

> [Abrams's] testimony was straight[]forward, consistent[,] and with a demeanor that bespoke wide-eyed innocence. His credibility has not been attacked extrinsically and any untoward motive he may have had for not going to a Galloway Township judge is only a matter of speculation. This [c]ourt is satisfied that Officer Abrams'[s] conduct was not motivated by the intent to "forum shop[,"] or gain [an] unfair advantage by going to the Atlantic City judge. There is no evidence that there was a need for him to seek any advantage inasmuch as the affidavit overwhelmingly establishes probable cause for the issuance of the warrant.

Judge Garofolo emphasized that the warrant requirement's underlying goal is to have a neutral and detached magistrate determine probable cause. The judge reasoned that "an inconsequential procedural deviation in the application process should not invalidate a warrant issued by a municipal court judge upon a finding of probable cause." Judge Garofolo inferred that the cross-assignment order was designed to maximize efficiency and provide "administrative direction" concerning applications "which often are made on an emergent . . . basis," and "was [not] intended to strip a judge of his cross[-]assigned jurisdiction into other municipalities."

In reviewing a motion to suppress, an appellate court defers to the trial court's factual and credibility findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Deference is afforded "because the 'findings of the trial judge . . . are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). "An appellate court should disregard those findings only when a trial court's findings of fact are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015). The legal conclusions of a trial court are reviewed de novo. Id. at 263.

"[A] search executed pursuant to a warrant is presumed to be valid" and "a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (citation omitted). "Accordingly, courts 'accord substantial deference to the discretionary determination resulting in the

issuance of the [search] warrant.'" State v. Keyes, 184 N.J. 541, 554 (2005) (citation omitted).

"[A]n appellate court's role is not to determine anew whether there was probable cause for issuance of the warrant, but rather, whether there is evidence to support the finding made by the warrant-issuing judge." State v. Chippero, 201 N.J. 14, 20-21 (2009). "Doubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" Keyes, supra, 184 N.J. at 554 (citations omitted).

In contrast, a warrantless search is presumed invalid unless it falls within a recognized exception. State v. Witt, 223 N.J. 409, 422 (2015). Nonetheless, a balance must be maintained between "individual freedom from police interference and the legitimate and reasonable needs of law enforcement." State v. Coles, 218 N.J. 322, 343 (2014). The State bears the burden, by a preponderance of the evidence, to establish that the warrantless search or seizure of an individual was justified in light of the totality of the circumstances. State v. Mann, 203 N.J. 328, 337-38 (2010).

### III.

#### A.

With the above principles in mind, we first address defendant's challenge to the warrantless search of the center

console of the rental car he was driving on September 7, 2011, which formed the basis for the crimes charged in Indictment No. 12-01-0168. Defendant argues that the police improperly searched the center console for credentials, and that the drug evidence found there, along with the evidence discovered after he was arrested and searched, must be suppressed as a result of the improper credentials search.[5] We disagree.

The Court has recognized that in certain situations, police officers have the authority to conduct limited warrantless searches of a vehicle in order to produce proof of ownership and insurance. In State v. Pena-Flores, 198 N.J. 6, 31 (2009), for example, the Court held that after stopping the defendant for a traffic violation and finding discrepancies between information from a computer lookup of the license plate and the actual car, police were "entitled, separate and apart from the automobile exception, to look into the areas in the vehicle in which evidence of ownership might be expected to be found." In State v. Patino, 83 N.J. 1, 12 (1980), the Court recognized that

---

[5] With respect to both this search and the subsequent August 2012 search, defendant does not challenge the initial police stop of the vehicle he was operating. We note "'[i]t is firmly established that a police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense.'" Locurto, supra, 157 N.J. at 470 (quoting State v. Smith, 306 N.J. Super. 370, 380 (App. Div. 1997)).

following a traffic violation, "a search of the vehicle for evidence connected with that violation" was permissible if "reasonable in scope and tailored to the degree of the violation."  In State v. Boykins, 50 N.J. 73, 77 (1967), the Court noted that "if the operator is unable to produce proof of registration, the officer may search the car for evidence of ownership . . . ."

Undoubtedly, we have cautioned against an overly-broad reading of Boykins.  In State v. Lark, 319 N.J. Super. 618, 621-22 (App. Div. 1999), aff'd 163 N.J. 294 (2000), the defendant was stopped for a minor traffic offense and provided a valid registration for the car, but could not produce his driver's license.  The defendant was ordered out of the car and searched; he had no identification on his person.  Id. at 622.  The police officer then opened the car door to search for the defendant's license or identification and observed a bag containing drug paraphernalia, which he seized.  Ibid.  He then returned to the car to continue the search, ultimately finding a significant amount of cocaine.  Ibid.

We reversed the trial judge's denial of the defendant's motion to suppress.  Id. at 624.  We noted that "[s]ince Boykins, no Supreme Court ha[d] allowed a search based solely on a driver's inability to present driving credentials.  In every

case we examined, the facts supported probable cause to search or arrest." Id. at 625. We further observed that "the search in Boykins itself was based on probable cause." Id. at 626 (citing Boykins, supra, 50 N.J. at 78). Lastly, we noted that "because this case does not involve a registration search, we need not determine the full import of the Boykins *dictum* here." Ibid. We held:

> New Jersey law prescribes exactly what an officer should do when, during a traffic stop, a driver fails to present his license and then lies about his identity. The officer may either detain the driver for further questioning until he satisfies himself as to the driver's true identity, or arrest the driver for operating a vehicle without a license. The officer may not, however, absent probable cause to believe that a further offense has been committed, enter the vehicle to look for identification.
>
> [Id. at 627 (citations omitted).]

Our cases have recognized, however, that even absent probable cause, police may conduct a limited warrantless search of a car for documentation if a defendant is unwilling or unable to produce it. See, e.g., State v. Gammons, 113 N.J. Super. 434, 437 (App. Div.), aff'd 59 N.J. 541 (1971) ("When defendant could not produce his registration certificate . . . [the officer] made the perfectly logical deduction that it might still be in the damaged car which the police had the right to

search for evidence of ownership in view of defendant's failure to produce the certificate.").

We reached a different result on the facts presented in State v. Jones, 195 N.J. Super. 119 (1984). There, the defendant suffered minor injuries when his car overturned. Id. at 121. When police extricated the defendant from the vehicle, he was only able to produce his driver's license, the registration and insurance still being in the overturned car. Ibid. When the car was righted, the investigating officer entered the vehicle to get the credentials for his report. Id. at 121-22. In this process, he saw an unzipped travel bag on the backseat that contained drug paraphernalia and what appeared to be cocaine. Id. at 122.

We recognized the vitality of the credentials exception to the warrant requirement. "[W]here there has been a traffic violation and the operator of the motor vehicle is unable to produce proof of registration, a police officer may search the car for evidence of ownership." Ibid. (citing Boykins, supra, 50 N.J. at 77). That search "must be 'confined to the glove compartment or other area where a registration might normally be kept in a vehicle[.]'" Id. at 122-23 (quoting Patino, supra, 83 N.J. at 12). However, we suppressed the evidence, noting: "We read Boykin and Patino as requiring a showing that [the]

defendant was either unable or unwilling to produce the [credentials]." Id. at 123.

More recently, in State v. Keaton, 222 N.J. 438, 442-43 (2015), the Court considered whether the warrantless entry of the defendant's overturned vehicle to obtain motor vehicle credentials, without providing the defendant with an opportunity to consent to the entry or present those credentials beforehand, was unlawful. In Keaton, when police arrived at the scene of the one-car accident, the defendant had been removed from the vehicle and was receiving treatment from emergency medical personnel. Id. at 443. The trooper never asked the defendant for his credentials or for permission to enter the vehicle. Id. at 444. After crawling in a rear window, the trooper saw an open backpack containing a handgun and a small amount of marijuana on the dashboard. Ibid.

Citing extensively to our decision in Jones, supra, 195 N.J. Super. at 122, the Court said that "under settled law, the warrantless search of a vehicle is only permissible after the driver has been provided the opportunity to produce his credentials and is either unable or unwilling to do so." Keaton, supra, 222 N.J. at 450 (emphasis added) (citing State v. Bruzzese, 94 N.J. 210, 236 (1983), cert. denied, 405 U.S. 1030, 104 S. Ct. 1295, 79 L. Ed. 2d 695 (1984)). The Court continued:

> Here, defendant was never provided such an opportunity. The trooper did not speak to defendant at the scene of the accident. The trooper never asked the EMTs for help in determining whether defendant was able to provide his credentials. Moreover, the trooper never asked defendant for his credentials once his injuries were tended to at the hospital. Instead, the trooper made the decision to search defendant's car for credentials only for the trooper's convenience and expediency, without ever providing defendant the opportunity to present them. Accordingly, we find that the items discovered in defendant's car do not fall within the plain view doctrine, and were illegally seized, because the trooper was not lawfully within the viewing area at the time of the contraband's discovery.
>
> [Ibid. (citing Bruzzese, supra, 94 N.J. at 236).]

The Court affirmed our judgment suppressing the evidence. Id. at 443. We conclude that this case is both factually and legally distinguishable from Keaton.

Unlike Keaton, where the responding officer never attempted to speak to the defendant who was conscious and being treated at the scene for minor injuries, here Officer Heintz gave defendant an opportunity to produce his license, registration, proof of insurance, and the car rental agreement. Defendant was unable to provide Heintz with these credentials and instead produced only an expired state-issued identification card and an owner's manual. Defendant's failure to produce the documents required under N.J.S.A. 39:3-29 triggered the "documents" exception to

the warrant requirement as articulated in Keaton, supra, 222 N.J. at 442—43. While defendant ostensibly was willing to acquire the necessary documents, his phone call to his girlfriend nevertheless failed to establish that he was able to produce them. No evidence in the record suggests that Boyd ever responded or that the car's rental agreement or registration were ever produced. Therefore, Heintz was justified in initiating a search for defendant's credentials.

Furthermore, as Judge Baker aptly noted, Heintz did not exceed the permissible scope of a search for driving credentials when he opened the center console of the vehicle. A center console is a relatively non-private area in which documentation "might normally be kept." Patino, supra, 83 N.J. at 12. We also note that the judge specifically found that defendant "did not thoroughly search the center console." Rather, Heintz "observed [defendant] open and immediately shut the center console, [and] it seems, to me, if somebody was really looking for documents, they would have opened the center console and gone in there and moved stuff around. That's not what [defendant] did."

Once Heintz opened the center console he visually observed the drugs that were stored there. Those items were properly seized under the plain view exception to the search warrant

requirement. As our Supreme Court recently iterated, the plain view doctrine allows seizures without a warrant so long as an officer is "lawfully . . . in the area where he observed and seized the incriminating item or contraband, and it [is] immediately apparent that the seized item is evidence of a crime." State v. Gonzales, 227 N.J. 77, 101 (2016). Defendant's ensuing arrest, and the seizure of the additional contraband from his person, were likewise unimpeachable.

B.

Defendant next argues that the warrant to search his Galloway Township motel room was invalid because it was issued by an Atlantic City municipal judge in contravention of the procedures prescribed in State v. Broom-Smith, 201 N.J. 229 (2010), and the cross-assignment order. The State acknowledges the procedural deficiency, but contends it is merely "technical" in nature and does not warrant the drastic remedy of suppression.

The exclusionary rule, as set forth in Weeks v. United States, 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914), and extended to the states in Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L. Ed. 2d 1081, 1090 (1961), requires the suppression of evidence obtained during unreasonable searches and seizures. State v. Gioe, 401 N.J. Super. 331, 339 (App.

Div. 2008), <u>certif. denied</u>, 199 <u>N.J.</u> 129 (2009). The rule's overarching purpose is to deny the prosecution any benefit it would otherwise receive from illicitly-obtained evidence, thereby deterring the police from violating civilians' Fourth Amendment rights. <u>State v. Williams</u>, 192 <u>N.J.</u> 1, 14 (2007); <u>see also</u> <u>Elkins v. United States</u>, 364 <u>U.S.</u> 206, 217, 80 <u>S. Ct.</u> 1437, 1444, 4 <u>L. Ed.</u> 2d 1669, 1677 (1960) ("The rule is calculated to prevent, not to repair. Its purpose is to deter -- to compel respect for the constitutional guaranty in the only effectively available way -- by removing the incentive to disregard it.").

A corollary purpose of the exclusionary rule is to "uphold judicial integrity" by informing the public that "our courts will not provide a forum for evidence procured by unconstitutional means." <u>Williams</u>, <u>supra</u>, 192 <u>N.J.</u> at 14. The suppression of evidence "sends the strongest possible message that constitutional misconduct will not be tolerated and therefore is intended to encourage fidelity to the law." <u>Ibid.</u>

Nevertheless, courts do not apply the exclusionary rule indiscriminately. <u>Gioe</u>, <u>supra</u>, 401 <u>N.J. Super.</u> at 339. Because the rule "generates substantial costs, which sometimes include setting the guilty free and the dangerous at large[,]" the United States Supreme Court has characterized the suppression of evidence as a "last resort," rather than a "first impulse."

Hudson v. Michigan, 547 U.S. 586, 591, 126 S. Ct. 2159, 2163, 165 L. Ed. 2d 56, 64 (2006) (citations omitted).  Similarly, in refusing to invalidate a warrant that misidentified the address of the location to be searched, the New Jersey Supreme Court noted:  "When the truth is suppressed and the criminal is set free, the pain of suppression is felt, not by the inanimate State or by some penitent policeman, but by the offender's next victims for whose protection we hold office."  State v. Bisaccia, 58 N.J. 586, 590 (1971).

Therefore, New Jersey courts apply the exclusionary rule only to evidence obtained in violation of a defendant's constitutional rights.  State v. Evers, 175 N.J. 355, 378—80 (2003); State v. Hai Kim Nguyen, 419 N.J. Super. 413, 428 (App. Div.), certif. denied, 208 N.J. 339 (2011); State v. Gadsden, 303 N.J. Super. 491, 503 (App. Div.), certif. denied, 152 N.J. 187 (1997) (citing State v. Hartley, 103 N.J. 252, 282—83 (1986)).  In other words, so long as the objectives underlying the warrant requirement remain intact, slight departures from strict compliance with the rules will not invalidate a search. State v. Valencia, 93 N.J. 126, 134 (1983).  Applying the exclusionary rule to errors of such minor and technical significance would "debase the judicial process and breed contempt for the deterrent thrust of the criminal law."  State

21

v. Bickham, 285 N.J. Super. 365, 368 (App. Div. 1995). Rule 3:5-7(g) substantially echoes this sentiment: "In the absence of bad faith, no search or seizure made with a search warrant shall be deemed unlawful because of technical insufficiencies or irregularities in the warrant or in the papers or proceedings to obtain it, or in its execution."

New Jersey case law is replete with instances in which courts have declined to apply the exclusionary rule to technical violations of the rules governing warrants. See State v. Presley, 436 N.J. Super. 440, 453, 460 (App. Div. 2014) (holding a judge's disqualifying conflict as to one defendant was not a sufficient basis for co-defendants to seek invalidation of a warrant, in part because there were no allegations of police misconduct, judicial bias, or lack of probable cause); Nguyen, supra, 419 N.J. Super. at 417 (holding the exclusionary rule was inapplicable when New Jersey investigators discovered a murder weapon in New York State, because the investigators' act of straying beyond their statutory jurisdiction was a technical violation that did not implicate Fourth Amendment privacy rights); State v. McCann, 391 N.J. Super. 542, 544, 554—55 (2007) (holding suppression was not an appropriate remedy when a municipal court judge who issued a search warrant should have recused himself due to his "long-standing attorney-client

relationship" with the defendant); <u>Gadsden</u>, <u>supra</u>, 303 <u>N.J. Super.</u> at 492, 505—06 (declining to apply the exclusionary rule when Hillside police officers violated <u>N.J.S.A.</u> 40A:14-152 by traveling to Newark to execute an arrest warrant; reasoning probable cause existed, and the jurisdictional violation was "technical," "procedural," and "statutory" rather than constitutional).

In <u>Gioe</u>, <u>supra</u>, 401 <u>N.J. Super.</u> at 341—42, we considered a warrant's validity in light of the applicant's failure to personally appear before the issuing judge. We held that although the applicant violated <u>Rule</u> 3:5-3(a), the resulting deficiency in the warrant did not require the trial court to suppress the marijuana police had seized from defendant's vehicle. <u>Id.</u> at 342. We evaluated the evidence establishing probable cause and reasoned that if the applicant had appeared before the judge, "the search warrant would undoubtedly have been issued exactly as it was via facsimile." <u>Id.</u> at 343. Moreover, we determined the applicant demonstrated "no evidence of bad faith or deliberate disregard of <u>Rule</u> 3:5-3(a)[.]" <u>Ibid.</u>

Here, we likewise conclude that neither Officer Abrams nor the Atlantic City municipal judge violated defendant's constitutional rights. Because a valid search of defendant's vehicle revealed marijuana, methamphetamines, and a motel room

key, and defendant admitted to possessing additional contraband in his motel room, Judge Garofolo correctly determined that Abrams's affidavit "overwhelmingly establishe[d] probable cause[.]" If Abrams had appeared before the Galloway Township municipal court judge, that judge would undoubtedly have issued a substantively identical warrant.

Further, there is no evidence suggesting Abrams exhibited bad faith or acted with deliberate disregard for the law. According to his testimony, he mistakenly thought an Atlantic City judge was the appropriate magistrate to consider a warrant application for a matter originating in Atlantic City. Judge Garofolo found Abrams's testimony highly credible, and this finding is entitled to substantial deference on appeal. See Locurto, supra, 157 N.J. at 471 (quoting Johnson, supra, 42 N.J. at 161—62).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4399-14T2