**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4443-16T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ANTHONY ROSS, a/k/a
ANTHONY M. BUN,

      Defendant-Appellant.

_____

      Submitted September 13, 2018 – Decided March 14, 2019

      Before Judges Accurso, Vernoia and Moynihan.

      On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 15-06-0865.

      Joseph E. Krakora, Public Defender, attorney for appellant (Elizabeth C. Jarit, Assistant Deputy Public Defender, of counsel and on the brief).

      Esther Suarez, Hudson County Prosecutor, attorney for respondent (Charles C. Cho, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Anthony Ross appeals his convictions for third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1), and third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(b)(3), and the sentence imposed on the latter conviction following the court's merger of the offenses. More particularly, he contends the court erred by denying his motion to suppress evidence, allowing police testimony concerning reports of drug activity made by concerned citizens, providing improper jury instructions and failing to properly consider and find aggravating and mitigating factors at sentencing. Based on our review of the record in light of the applicable legal principles, we affirm the court's denial of defendant's motion to suppress evidence, reverse defendant's convictions and remand for further proceedings.

I.

Defendant was charged in an indictment with seven drug-related offenses and endangering the welfare of a child, N.J.S.A. 2C:24-4(a), as the result of a police investigation of his alleged distribution of six packets of heroin on January 31, 2015, in front of a Jersey City apartment building located on Martin Luther King Drive, and the subsequent seizure of 300 packets of heroin from apartment 3C in the building pursuant to a search warrant. The charges against co-defendants Annta I. Walker, Maurice A. Washington, Juan Maldonado, Glen

2

Coleman, and Jacinto A. Robles were severed prior to defendant's trial, and some of the charges against defendant were dismissed at the State's request prior to his trial.

Defendant's Suppression Motion

Defendant moved to suppress the evidence seized during a January 31, 2015 search of apartment 3C pursuant to a warrant that was issued based on the affidavit of Jersey City Police Officer Dwayne Dowell. Defendant claimed the seized evidence should be suppressed because Dowell's affidavit did not assert facts sufficient to establish probable cause for a search of the apartment.

In the affidavit, Dowell described his experience as a police officer conducting narcotics investigations, and included information the police received from "a concerned citizen," a "confidential informant," and another "informant" about defendant's alleged involvement in the possession and distribution of phenylcyclohexyl piperidine (PCP) and heroin "out of" apartment 3C in an apartment building on Martin Luther King Drive and a nearby convenience store.

The affidavit states Jersey City Police Sergeant McVicar "received information from a concerned citizen regarding narcotic and gang activity" in the area of the apartment building. It further explained the "concerned citizen"

provided information in the past "that has resulted in more than a dozen arrests of individuals for narcotics-related offenses and the seizure of narcotics, money, and other related contraband." It also stated the concerned citizen had "personal knowledge of the subjects of [the] investigation," including defendant, and had "observed [defendant] distributing . . . heroin . . . in the early morning hours" and that defendant "distributes" controlled dangerous substances "out of" the Martin Luther King Drive apartment building. The informant also personally observed defendant entering apartment 3C.

In the affidavit, Dowell also stated that on January 22, 2015, a confidential informant (CI) notified him that, based on the CI's personal knowledge, defendant engaged in "narcotics distribution activities," and offered the CI bottles of PCP for distribution. The CI told Dowell he had personal knowledge defendant "will conduct hand to hand narcotic transaction[s]" and "distributes [controlled dangerous substances] out of apartment 3C" in the Martin Luther King Drive apartment building and from a nearby convenience store. Dowell also stated Jersey City Police Sergeant Wojtowicz was advised by an informant that defendant "stashes narcotics on a ground level courtyard located inside of [the apartment building]."

A-4443-16T4

In the affidavit, Dowell further asserted that he began surveilling the area of the Martin Luther King Drive apartment building after receiving "numerous complaints from concerned citizens," and described his observations of defendant at approximately 8:30 a.m. on January 31, 2015.

Dowell observed defendant exit the apartment building, walk southbound and return a short time later with Coleman, Robles and a third individual. Dowell saw defendant extend his hand behind his back and deliver a small white object to Coleman. Dowell believed he witnessed a narcotics transaction and requested that other officers stop Coleman and Robles. Dowell observed defendant enter the apartment building, and also saw Coleman hand the white object to Robles in exchange for currency. When the other officers arrived, Robles was found in possession of six glassine bags containing suspected heroin and bearing the label "Dirty Money." The affidavit stated Jersey City Police Sergeant McVicar entered the Martin Luther King Drive apartment building, observed defendant exiting the elevator and arrested him.

The affidavit further detailed facts and evidence showing defendant lived in apartment 3C with his girlfriend, Annta Walker. The affidavit described prior investigations during which defendant's address was identified as apartment 3C, Walker's filing of a domestic violence complaint against defendant listing

5

A-4443-16T4

apartment 3C as her and defendant's address, the results of a database search showing the apartment as defendant's address, and the fact that defendant listed apartment 3C as his address following prior arrests.

The affidavit also generally described the Martin Luther King Drive apartment building, and included Dowell's assertion "that there is probable cause to believe that there may be . . . weapons at" defendant's apartment and "additional CDS narcotics . . . along with the possibility of narcotic paraphernalia."

The court determined that the totality of the circumstances described in the affidavit established probable cause to search apartment 3C. The court concluded that although the affidavit did not include any evidence establishing the CI's veracity, Dowell's surveillance of the narcotics transaction provided corroboration of the CI's statements concerning defendant's alleged drug dealing. The court also found that based on the officer's observations of the suspected drug transaction in front of the apartment building, and the evidence showing defendant lived in apartment 3C in the building, there was probable cause to believe defendant entered the building following the transaction to enter the apartment to obtain "a product to sell on the street." The court denied

6

defendant's motion to suppress the heroin recovered from the apartment, and defendant proceeded to trial.

Defendant's Trial

The trial evidence showed that on January 31, 2015, Dowell conducted plain-clothes surveillance in an unmarked vehicle in the area of the Martin Luther King Drive apartment building. Dowell testified generally that he conducts surveillance after he receives information from "concerned citizens" about drug activity in a particular area. He described what he observed during the surveillance of defendant in a manner generally consistent with the representations in his search warrant affidavit.

He explained that at approximately 8:30 a.m. on January 31, 2015, he observed defendant exit the apartment building, walk out of view, and return a short while later with Coleman, Robles and the third individual walking behind him.

As defendant walked toward the apartment building, Dowell observed him "reach behind his back and hand . . . Coleman small white objects." Officer Dowell testified that "from what [he] observed, [he] believe[d] it was a narcotics

transaction," so he notified nearby officers[1] to stop defendant and Coleman. Defendant entered the apartment building, and Dowell next observed "Coleman hand those same objects he received from [defendant] to . . . Robles." The other officers then arrived, and "recovered six bags of heroin from Robles." Each of the bags of heroin recovered from Robles bore the label "Dirty Money." They were marked as exhibit S-13 in evidence.

Dowell testified that later that day he submitted an affidavit in support of a request for a warrant to search apartment 3C. During the subsequent search, the police recovered "six bricks of heroin," containing "about three hundred bags of heroin," in "a child's bedroom." Police also recovered mail that was addressed to defendant and Walker at apartment 3C, various pieces of defendant's identification and $2452 in cash. The 300 bags of heroin were wrapped in paper bearing a "Dirty Money" stamp, and were marked in evidence as exhibit S-7. Police did not recover any items "used to ingest heroin."

McVicar testified the police surveilled the area near the apartment building because they "received complaints about narcotics activity taking place in that area." Following Dowell's radio transmission advising the other officers

---

[1] Jersey City Police Officer William Costigan later testified that officers waited in "perimeter unit[s] . . . on the outskirts" of the surveilled area to avoid alerting anyone about the presence of the police.

concerning the alleged drug transaction, McVicar entered the apartment building and encountered defendant exiting the first-floor elevator. McVicar then placed defendant under arrest.

Kaitlin Farrell, a senior forensic chemist at the Hudson County Prosecutor's Office's Forensic Laboratory, tested seven of the 300 bags recovered from apartment 3C and determined they each contained heroin. She tested two of the six bags recovered from Robles and determined they contained heroin.

The trial court qualified Jersey City Detective Anthony Goodman "as an expert in the area of narcotics." Detective Goodman testified that heroin is packaged in individual glassine bags for individual sales and groups of ten are bundled together and wrapped in a rubber band. Several bundles are then wrapped in magazine or newspaper as "a brick." The individual glassine bags may also have logos or insignias as "a brand name" to advertise the heroin. Goodman explained that drug dealers often designate a "stash house" where a "majority of the drugs and/or money is kept."

A-4443-16T4

The court submitted three charges to the jury for its determination.[2] Defendant was acquitted of third-degree distribution of a controlled dangerous substance, heroin, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (count one), but convicted of third-degree possession of a controlled dangerous substance, heroin, N.J.S.A. 2C:35-10(a)(1) (count four), and third-degree possession of a controlled dangerous substance, heroin, with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(5) (count five).[3]

The court granted the State's motion for imposition of a mandatory extended term sentence pursuant to N.J.S.A. 2C:43-6(f). Following merger of the offenses, the court sentenced defendant to an eight-year custodial term, with a forty-two-month period of parole ineligibility, on his conviction for third-degree possession of heroin with intent to distribute. This appeal followed.

On appeal, defendant makes the following arguments:

---

[2] As noted, at the State's request the court dismissed certain counts of the indictment prior to trial. Other counts were dismissed at the State's request during trial. When the matter was submitted for the jury's deliberations, only three charges against defendant remained.

[3] Due to the dismissal of all but three of the charges prior to the submission of the case to the jury for its deliberations, in its instructions to the jury the court referred to count one as "count one," but referred to count four as "count two" and count five as "count three." In our discussion of the counts, we refer to them as originally designated in the indictment.

POINT I

THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT FAILED TO PROVIDE PROBABLE CAUSE TO ESTABLISH THAT NARCOTICS WOULD BE FOUND IN APARTMENT 3C OF 450 MLK.

POINT II

DEFENDANT'S RIGHT TO CONFRONTATION WAS VIOLATED BY THE ADMISSION OF TESTIMONY THAT THE POLICE DECIDED TO CONDUCT SURVEILLANCE AT A PARTICULAR PLACE AFTER RECEIVING INFORMATION FROM CONCERNED CITIZENS ABOUT DRUG ACTIVITY.

POINT III

THE TRIAL COURT'S REPEATED USE OF "AND/OR" DURING THE JURY INSTRUCTIONS CREATED THE DANGER OF A PATCHWORK VERDICT AND NECESSITATES REVERSAL OF DEFENDANT'S CONVICTIONS.

POINT IV

THE CUMULATIVE IMPACT OF THE ERRORS DENIED THE DEFENDANT DUE PROCESS AND A FAIR TRIAL.

POINT V

RESENTENCING IS REQUIRED BECAUSE THE COURT PENALIZED THE DEFENDANT FOR EXERCISING HIS RIGHT TO TRIAL, INCORRECTLY RELIED ON THE DEFENDANT'S

11

ADDICTION IN FINDING AN AGGRAVATING FACTOR, AND IMPROPERLY REJECTED MITIGATING FACTOR ELEVEN.

A. Imposition of a trial penalty violates both the Criminal Code and Constitution, requiring resentencing.

B. Aggravating factor three was improperly based on Mr. Ross's substance abuse history in violation of State v. Baylass.

C. The rejection of mitigating factor eleven, when it was amply supported in the record, requires resentencing.

## II.

We first address defendant's contention the trial court erred by denying his motion to suppress evidence seized during the January 31, 2015 search of apartment 3C. A reviewing court "accord[s] substantial deference to the discretionary determination resulting in the issuance of [a] [search] warrant." State v. Boone, 232 N.J. 417, 427 (2017) (third alteration in original) (quoting State v. Jones, 179 N.J. 377, 388 (2004)). Our role "is not to determine anew whether there was probable cause for issuance of the warrant." State v. Hamlett, 449 N.J. Super. 159, 169 (App. Div. 2017). Rather, we "consider the 'totality of the circumstances,'" Boone, 232 N.J. at 427 (citation omitted), and determine "whether there is evidence to support the [probable cause] finding made by the

12

warrant-issuing judge," Hamlett, 449 N.J. Super. at 169 (quoting State v. Chippero, 201 N.J. 14, 20-21 (2009)). Any marginal doubt as to the adequacy of facts submitted to establish probable cause "should ordinarily be resolved by sustaining the search." Id. at 170 (quoting State v. Keyes, 184 N.J. 541, 554 (2005)); Simmons v. Loose, 418 N.J. Super. 206, 224 (App. Div. 2011) (citation omitted).

A warrant application must provide evidence "that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched." Boone, 232 N.J. at 426 (first emphasis removed) (quoting Jones, 179 N.J. at 388). A probable cause determination must be based on facts contained in the "four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." Id. at 427 (quoting State v. Marshall, 199 N.J. 602, 611 (2009)). A court considering a search warrant application "is required only to make a practical and realistic evaluation of the information presented on the issue of probable cause." Chippero, 201 N.J. at 32. A "'search executed pursuant to a warrant is presumed to be valid' and 'a defendant challenging its validity has the burden to prove that there was no probable cause supporting the issuance of the warrant or that the

13

search was otherwise unreasonable.'"  Hamlett, 449 N.J. Super. at 169  (quoting Jones, 179 N.J. at 388).

Defendant contends Dowell's affidavit did not establish probable cause to search apartment 3C because "[t]he only information linking apartment 3C and the alleged narcotics activity came from statements made by an unidentified [CI] alleging defendant sold drugs from that residence."  He also claims the information from the CI was over a week old, and therefore was stale and could not support probable cause there were drugs in the apartment on January 31, 2015.

Defendant's argument is founded solely on the inaccurate premise that the only information in Dowell's affidavit supporting probable cause to search apartment 3C is the information attributed to the CI.  As the motion court correctly determined, however, even if the information attributed to the CI is disregarded, the totality of the other circumstances described in the affidavit established probable cause to search apartment 3C.

In the first instance, defendant ignores that the affidavit includes information provided by a "concerned citizen" who had previously provided information resulting in the seizure of narcotics and other contraband and "more than a dozen arrests of individuals for narcotics-related offenses."  The

14

concerned citizen reported personally observing defendant entering apartment 3C and "distributing . . . heroin . . . in the early morning hours . . . out of" the apartment building on Martin Luther King Drive. Courts generally presume a concerned citizen's veracity in reporting the commission of a crime even absent the showing of a history of providing reliable information demonstrated here, State v. Johnson, 171 N.J. 192, 216 (2002), and defendant does not challenge the information provided by the concerned citizen or the propriety of the court's reliance on it to support the finding there was probable cause to search apartment 3C.

Moreover, and as the motion court aptly found, the totality of the circumstances surrounding the police surveillance and investigation detailed in Dowell's affidavit independently provides probable cause for the search. Dowell observed defendant exit the Martin Luther King Drive apartment building, engage in what Dowell believed was a hand-to-hand distribution of heroin to Coleman, and immediately re-enter the apartment building where he was arrested a short time later. Dowell further explained that various police records showed apartment 3C as the long-standing address of defendant and his girlfriend, Annta Walker, and that three weeks prior to the search warrant request defendant provided apartment 3C as his address when he was arrested

15

on other charges. This information provided ample support for the court's determination there was probable cause to search defendant's apartment, even without regard to any of the information attributed by Dowell to the CI. See State v. Myers, 357 N.J. Super. 32, 35 (App. Div. 2003) (finding probable cause to search the defendant's residence where he was observed leaving the residence, walking to a nearby location where drug transactions took place and handing a package to another person in what police believed was a drug transaction).

We are also not persuaded by defendant's reliance on Boone to support his contention Dowell's affidavit failed to provide any facts that controlled dangerous substances would be found in apartment 3C. In Boone, police observed the defendant engage in various hand-to-hand drug transactions in the Englewood, Hackensack and River Edge areas, and at one point drive to an apartment complex where police suspected he lived. Boone, 232 N.J. at 422. Police did not observe defendant enter the building, but filed an application for a search warrant for apartment 4A in the apartment complex. Ibid. The application merely described defendant's residence as a "multi-family dwelling" without noting it was a thirty-unit building. Ibid. The Court held the police's

search warrant application was deficient because it failed to show how police knew defendant lived in the apartment they sought to search. Ibid.

The Court further noted that the police's conclusory statement that the defendant lived in the apartment was insufficient, and "nothing in the warrant affidavit tie[d] [the apartment] to the criminal activity alleged elsewhere in the affidavit." Id. at 429. Thus, the Court held that the "[p]olice failed to provide the issuing judge a basis of knowledge from which to conclude that contraband would be found in the particular apartment," ibid., because it did not provide "any evidential basis as to how they knew that specific unit in a thirty-unit building contained contraband," id. at 430.

Here, unlike in Boone, Dowell provided several bases supporting a finding that there was reason to believe evidence of narcotics dealing would be found in apartment 3C, and that defendant lived in that apartment. As noted, police records showed defendant resided in apartment 3C of the Martin Luther King Drive apartment building, and defendant was observed leaving the apartment building immediately before engaging in a hand-to-hand narcotics transaction and re-entering the apartment building immediately following the transaction. Those facts provided a sufficient basis for the officers to reasonably conclude that evidence of narcotics distribution would be found inside defendant's

17

apartment 3C.  See Myers, 357 N.J. Super. at 40.  The court therefore correctly denied defendant's motion to suppress the evidence seized from the apartment pursuant to the search warrant.

## III.

"The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution confer on . . . defendant[s] the right to confront the witnesses against [them]."  State v. Williams, 219 N.J. 89, 92 (2014).  Defendant contends his right to confrontation was violated when Dowell and Sergeant McVicar testified that their investigation and surveillance on January 31, 2014, was the result of citizen complaints about narcotics transactions in the area of the apartment building.  Although we reverse defendant's convictions based on the errors in the jury instructions we discuss in Section IV, infra, we address defendant's claims that Dowell's and McVicar's testimony violated his confrontation rights for purposes of completeness and to provide guidance to the trial court on remand.

Defendant challenges the admission of the following testimony from Dowell in response to questions posed by the prosecutor:

> [The Prosecutor]: And what are some of the job responsibilities of a surveillance officer?

[Dowell]: We take in complaints from concerned citizens. Also information received from concerned citizens . . . about drug activity in certain areas. Then I would - - what a surveillance officer would do is set up surveillance to surveil those areas to see what exactly is going to - -

[The Prosecutor]: And on January 31, 2015, were you conducting surveillance in any particular area?

[Dowell]: Yes, I was conducting surveillance in the area of Martin Luther King [Drive] and Oak Street.

Defendant also challenges the admission of McVicar's testimony, over defendant's objection, during the following exchange with the prosecutor:

[The Prosecutor]: Now can you explain to the . . . jury what the circumstances were under which you came into contact with [defendant]?

[McVicar]: We had - - myself and other members of the street crime unit, we received complaints about narcotics activity taking place in that area of Oak Street and [Martin Luther King] Drive.

[Defense Counsel]: Judge, I'm going to object about any complaints that might have been received.

[The Court]: Overruled.

[McVicar]: And for that reason, [p]olice [o]fficer Dowell established a surveillance in that area.

In State v. Bankston, the Court addressed an accused's right to confront witnesses in the context of a police officer's testimony concerning the reasons

certain actions were taken during an investigation.  63 N.J. 263, 265-68 (1973).

During trial, a detective testified that "before defendant was arrested the officers had been talking to an informer and that based on information received they went to [a] tavern," with a description of defendant's clothing, and found defendant in possession of narcotics.  Id. at 266.

The Court explained the hearsay rule does not prevent an officer from testifying that he took an action based "upon information received," but that "when the officer becomes more specific by repeating what some other person told him concerning a crime by the accused the testimony violates the hearsay rule . . . [and] the accused's Sixth Amendment right to be confronted by witnesses against him."  Id. at 268-69.  The Court reversed the defendant's conviction because the "detective's hearsay testimony led to the 'inescapable inference' that the detective received information from an unknown source implicating the defendant in the crime," State v. Branch, 182 N.J. 338, 349 (2005) (explaining Bankston), and because "the record presented a debatable case for the jury," Bankston, 63 N.J. at 272, admission of the testimony "may well have been the decisive factor which resulted in the guilty verdict," id. at 273.

In <u>Branch</u>, the primary issue concerning defendant's guilt was his identification by two victims during their review of photo arrays. 182 N.J. at 347. A detective testified the arrays were assembled "based on information received." <u>Ibid.</u> The Court found that a police officer may testify that he took an action "based on information received" to explain an action, "but only if necessary to rebut a suggestion that [he or she] acted arbitrarily and only if the use of that phrase does not create an inference that the defendant has been implicated in a crime by some unknown person." <u>Id.</u> at 352. "The 'common thread' that renders testimony about information received from non-testifying third parties inadmissible 'is that a police officer may not imply to the jury that he possesses superior knowledge, outside the record, that incriminates the defendant.'" <u>State v. Weaver</u>, 219 N.J. 131, 152 (2014) (quoting <u>Branch</u>, 182 N.J. at 351); <u>see also</u> <u>State v. Lazo</u>, 209 N.J. 9, 12-13 (2012) (finding "an officer's reasons for placing a particular photo in an array are irrelevant and prejudicial," and can "improperly bolster[] the victim's account and invade[] the role of the jury to weigh the victim's credibility").

Based on our review of the record, we are not convinced Dowell's testimony could have been fairly interpreted by the jury to suggest that Dowell had information supplied by third parties that incriminated defendant. The

testimony was provided without reference to defendant and instead more generally described the reason surveillance is set up in a particular area. Dowell testified that when he received complaints there might be drug activity in a particular area, he set up surveillance "to see what exactly is going on," but did not suggest in any manner that he conducted surveillance on January 31, 2014, because he had been advised by third parties that defendant was involved in any drug activity. Dowell's testimony was unnecessary because "[t]here was no legitimate need or reason [for Dowell] to tell the jury why" the surveillance was undertaken, Branch, 182 N.J. at 348, but it did not violate defendant's right to confrontation under the principles in Branch and Bankston.

Defendant also waived his confrontation claim by failing to object to Dowell's testimony at trial. "[T]he defendant always has the burden of raising his Confrontation Clause objection." State v. Williams, 219 N.J. 89, 99 (2014) (quoting Melendez-Diaz v. Massachusetts, 557 U.S. 305, 327 (2009)). "The right of confrontation, like other constitutional rights, may be waived by the accused." Id. at 98. A defendant is not required to assert a constitutional right, and a defense attorney may choose as part of a reasonable defense strategy to refrain from objecting to testimony that may be otherwise inadmissible because it violates a defendant's right to confrontation. Id. at 99. Here, in defendant's

22

brief on appeal he concedes his trial counsel made a strategic decision not to challenge Dowell's testimony, preferring not to raise the issue of the reason for the surveillance "so as not to draw attention to it" before the jury.

McVicar's testimony stands on a different footing. He was asked to describe the circumstances under which he "came into contact with" defendant and, in response, referred to complaints from third parties about "narcotics activity taking place in that area" of the apartment building that he "and other members of the street crime unit . . . received." The context presented by the question and McVicar's response permitted the reasonable inference that he and other members of the street crime unit came into contact with defendant based on reports from third parties defendant was involved in drug activity. The testimony violated defendant's constitutional right to confrontation because it implied McVicar and others possessed information outside of the record incriminating defendant. See Weaver, 219 N.J. at 152.

We further find that McVicar's testimony, although improperly admitted, does not require reversal of defendant's conviction. "When evidence is admitted that contravenes not only the hearsay rule but also a constitutional right, an appellate court must determine whether the error impacted the verdict." Id. at 154. Where, as here, there was an objection to the testimony, we must determine

23

whether the error in admitting the testimony is harmless; that is, whether the error was clearly capable of producing an unjust result. R. 2:10-2; State v. Scott, 229 N.J. 469, 483-84 (2017). "The harmless error standard . . . requires that there be 'some degree of possibility that [the error] led to an unjust [verdict]. The possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached.'" State v. R.B., 183 N.J. 308, 330 (2005) (second and fourth alterations in original) (quoting Bankston, 63 N.J. at 273).

Having carefully reviewed the record, we are convinced McVicar's testimony was not clearly capable of producing a verdict that the jury otherwise might not have reached. See R. 2:10-2. Defendant claims the testimony was prejudicial because it suggested defendant's participation in drug activity on the street near his apartment building. However, even though McVicar's testimony was accompanied by Dowell's proper testimony that he observed defendant participate in a hand-to-hand drug transaction, the jury found defendant not guilty of distribution of heroin. Moreover, defendant's convictions for possession of heroin and possession with intent to distribute heroin were separately supported by evidence wholly unrelated to any reports McVicar received concerning narcotics transactions on Martin Luther King Drive: the

24

police found six "bricks" of heroin, each containing fifty bags, packaged in a manner consistent with distribution.

Given the jury's finding that defendant did not commit the crime of distribution of heroin and the substantial other evidence supporting defendant's convictions, we find no possibility of an unjust result "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. G.V., 162 N.J. 252, 280 (2000) (quoting State v. G.S., 145 N.J. 460, 473 (1996)). On remand, however, McVicar shall not be permitted to testify concerning any complaints or reports concerning alleged drug activities on Martin Luther King Drive that resulted in the surveillance and law enforcement's interactions with defendant.

IV.

Defendant also claims he is entitled to reversal of his convictions because the court erred by instructing the jury that it could convict defendant of possession of heroin as charged in count four and possession with intent to distribute heroin as charged in count five if it found beyond a reasonable doubt that he possessed the heroin recovered from Robles, admitted in evidence as exhibit S-13, "and/or" the heroin recovered from his apartment, admitted in evidence as exhibit S-7. Defendant argues the court's use of the term "and/or"

in the jury instructions on those two counts injected ambiguity into the jury charge and permitted the jury to improperly reach a verdict lacking the requisite unanimity to sustain his convictions. See State v. Frisby, 174 N.J. 583, 596 (2002) ("The notion of unanimity requires jurors to be in substantial agreement as to just what a defendant did before determining his or her guilt or innocence." (citation omitted)).

More particularly, defendant challenges the following portion of the court's instruction on third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1), that was charged in count four:

> In order for you to find defendant guilty of the charge, the state must prove the following elements beyond a reasonable doubt. That S-7 and/or S-13 in evidence is a controlled dangerous substance. That the defendant possessed or obtained S-7 and/or S-13 in evidence. That the defendant acted knowingly or purposely in possessing or obtaining S-7 and/or S-13.
>
> The first element the state must prove beyond a reasonable doubt is that S-7 and/or S-13 is [a controlled dangerous substance]. Here the state alleges the defendant possessed heroin.
>
> The second element the state must prove beyond a reasonable doubt is that defendant possessed or obtained S-7 or S-13. To obtain means to acquire, to get, to procure. To possess an item under the law, one must have a knowing, intentional control of that item accompanied by knowledge of its character. So a person who possesses an item such as S-7 and/or S-13

26

must know or be aware that he possesses it and he must know what it is that he possesses or has control of, that it's heroin.

. . . .

The third element the state must prove beyond a reasonable doubt is the defendant acted knowingly or purposely in obtaining or possessing S-7 and/or S-13.

[(emphasis added).]

Defendant also challenges the court's repeated use of "and/or" during its instruction of the elements of possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3), charged in count five. In pertinent part, the court instructed:

In the statute that [the charge is] based on says except as authorized by statute, it shall be unlawful for any person knowingly or purposely to possess or have under his control with intent to distribute a controlled dangerous substance.

The various kinds of substances are defined in another part of our statute. Heroin is a dangerous substance prohibited by statute. The statute read together with the indictment, identifies the elements which the State must prove beyond a reasonable doubt to establish the guilty of the defendant on this count of the indictment.

They are as follows. S-7 and/or S-13 in evidence is heroin. The defendant possessed or had under his control S-7 and/or S-13 in evidence. The defendant when he possessed or had under his control S-7 and/or S-13 in evidence had the intent to distribute S-7 and/or

27

S-13. That the defendant acted knowingly or purposely in possessing or having under his control with intent to distribute S-7 and/or S-13.

The first element the State must prove beyond a reasonable doubt is S-7 and/or S-13 is a controlled dangerous substance. The state alleges it's heroin.

With regard to the second element, the defendant has under his control or possessed S-7 and/or S-13 in evidence. I previously defined possessed for you.

In regard to the third element, the state has the - - that defendant had the intent to distribute S-7 and/or S-13 in evidence. Distribute means to transfer, actual, constructive or attempted from one person to another of a controlled dangerous substance. The intent must refer to a defendant's purpose to distribute S-7 and S-13 in evidence, not merely to possess the item.

. . . .

The intention must be gathered from a person's acts, conduct, from all the person said and did at a particular time and place and from all of the surrounding circumstances. You may consider any evidence as to the quantity, purity and packaging of S-7 and/or S-13 together with all other evidence in this case to aid you in your determination of the element of intent to distribute.

In regard to the fourth element the State must prove, as I stated, the defendant acted knowingly or purposely in having under his control or possessing S-7 and S-13 with an intent to distribute. I previously defined purposely and knowingly for you.

. . . .

28

To reiterate, the four elements of this offense are S-7 <u>and/or</u> S-13 in evidence is heroin. The defendant possessed or had under his control S-7 <u>and/or</u> S-13 in evidence. The defendant when he possessed or had under his control S-7 <u>and/or</u> S-13 in evidence, had the intent to distribute S-7 <u>and/or</u> S-13 in evidence. The defendant acted knowingly or purposely in possessing or having under his control with intent to distribute S-7 <u>and/or</u> S-13 in evidence.

[(emphasis added).]

"[A]ppropriate and proper charges [to a jury] are essential for a fair trial." <u>State v. Baum</u>, 224 N.J. 147, 158-59 (2016) (quoting <u>State v. Reddish</u>, 181 N.J. 553, 613 (2004)). A trial court has an "independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party." <u>Ibid.</u> (alteration in original) (quoting <u>Reddish</u>, 181 N.J. at 613). "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." <u>Ibid.</u> (quoting <u>State v. Bunch</u>, 180 N.J. 534, 541-42 (2004)).

A defendant must object to a jury instruction to preserve an objection to the instruction on appeal. <u>State v. Noble</u>, 398 N.J. Super. 574, 593 (App. Div. 2008). Where, as here, a "defendant did not object to the jury instructions at trial, we must apply the plain error standard." <u>State v. Burns</u>, 192 N.J. 312, 341

A-4443-16T4

(2007); see also R. 2:10-2.  In the context of a jury charge, plain error demands demonstration of "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result."  Burns, 192 N.J. at 341 (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).

An "error in a jury instruction that is 'crucial to the jury's deliberations on the guilt of a criminal defendant' is a 'poor candidate[ ] for rehabilitation' under the plain error theory."  Ibid. (quoting Jordan, 147 N.J. at 422).  In any event, any such error is to be considered "in light of 'the totality of the entire charge, not in isolation.'"  Ibid. (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).  Moreover, "any alleged error also must be evaluated in light 'of the overall strength of the State's case.'"  Ibid. (quoting Chapland, 187 N.J. at 289).

The State must prove each element of any offenses charged beyond a reasonable doubt.  State v. Medina, 147 N.J. 43, 49 (1996).  "[T]he possibility that defendant may have been sentenced based on a less-than-unanimous verdict . . . seriously implicates defendant's substantive rights."  State v. Shomo, 129 N.J. 248, 260 (1992).  The unanimity rule mandates unanimous agreement on each element of the offense.  State v. Gentry, 183 N.J. 30, 33 (2005).  The jury

must unanimously agree "on which acts were committed against which victim." Ibid.

In State v. Gonzalez, 444 N.J. Super. 62 (App. Div. 2016), we reversed the defendant's conviction as a co-conspirator and accomplice on robbery and aggravated assault charges. We found that the trial court's use of the term "and/or" during the jury instructions impermissibly "left open the possibility that some jurors could have found defendant conspired in or was an accomplice in the robbery but not the assault, while other jurors could have found he conspired in or was an accomplice in the assault but not the robbery." Id. at 76.

Here, we are convinced the court's repeated use of "and/or," its occasional use of "and" and its use on one occasion of "or" while referring to exhibits S-7 and S-13 during the instructions on the charges in the fourth and fifth counts created the same ambiguity we found required reversal of the defendant's conviction in Gonzalez. The evidence at trial showed the heroin admitted as S-13 was seized from Robles's hand after it was allegedly given to him by Coleman on the street in front of the apartment building. Defendant's connection to the heroin seized from Robles's hand is founded solely on Dowell's testimony that defendant engaged in a hand-to-hand transaction with Coleman, who then engaged in a hand-to-hand transaction with Robles. In contrast, the heroin

31

admitted in evidence as S-7 was recovered from defendant's apartment pursuant to a search warrant following defendant's arrest.

The separate quantities of heroin admitted in evidence as exhibits S-7 and S-13 were allegedly possessed by defendant at two different times, in different locations and under two wholly divergent circumstances. Those differences required separate determinations of defendant's guilt on the possessory offenses for which he was convicted under counts four and five, but the court's use of "and/or" throughout the jury instructions on those charges impermissibly allowed the jury to base its determination of defendant's guilt on the offenses based in part on S-7 and in part on S-13. For example, the instruction defendant could be convicted of the offenses if he possessed S-7 "and/or" S-13 permitted the jury to convict defendant if some of the jurors found defendant possessed S-7 and others found he possessed S-13. Similarly, the instructions allowed the jury to convict defendant of possession with intent to distribute if some of the jurors found he possessed the heroin found in his apartment, S-7, with intent to distribute and others disagreed but found he possessed the heroin recovered from Robles, S-13, with intent to distribute.

The potential for such results under the circumstances cannot be overstated here. Defendant was not found in actual possession of any heroin.

The State's case against him for the possessory offenses charged in counts four and five was wholly circumstantial and the instructions confusingly and ambiguously allowed the jury to find defendant guilty based on the multitude of permeations permitted by the layers of "and/or" options incorporated into the instructions of the various elements of the offenses charged. We are therefore convinced the court's instructions constituted error possessing "a clear capacity to bring about an unjust result," Burns, 192 N.J. at 341 (citation omitted), and reverse defendant's convictions.

We are not persuaded by the State's contention that the use of "and/or" during the instructions was not capable of producing an unjust result because the heroin recovered from Robles was in identical packaging and bore the same label as the heroin recovered in defendant's apartment. If the matter was that simple, we expect defendant would have been convicted of distribution of the heroin that was found in Robles's hand after defendant allegedly handed it to Coleman. The jury's determination that, despite the similarity in packaging, defendant was not guilty of distribution simply underscores that the offenses allegedly committed on the street in front of the apartment building are different from those allegedly committed in defendant's apartment, thus requiring

A-4443-16T4

separate and clear unanimous verdicts on defendant's alleged commission of the possessory offenses related to S-7 and S-13.

We are also not convinced defendant's acquittal on the distribution charge requires the conclusion that the jury unanimously determined defendant did not possess S-13, the heroin recovered from Robles. The similarity in the packaging of and label on the heroin recovered from Robles and the heroin found in the apartment might support a finding it was at one point possessed by defendant, including with an intent to distribute, but the jury may have acquitted defendant for reasons unrelated to whether it otherwise determined that he possessed it. For example, the jury may have found defendant not guilty of distribution because it rejected Dowell's testimony that he saw defendant actually distribute S-13 to Coleman as charged in the indictment. Moreover, possession is not an element of the crime of distribution under N.J.S.A. 2C:35-5(a)(1), State v. Ortiz, 253 N.J. Super. 239, 245-46 (App. Div. 1992), and the court otherwise correctly instructed the jury on the crime's elements, which do not include possession, see Model Jury Charges (Criminal), "Distribution Of A Controlled Dangerous Substance (N.J.S.A. 2C:35-5 (a)(1))" (rev. Jan. 14, 2008).

In sum, we reverse defendant's convictions because the jury instructions on the possessory offenses charged in counts four and five were clearly capable

of producing an unjust result.  <u>R.</u> 2:10-2.  On remand, the court shall require the jury to make separate findings of guilt as to S-7 and S-13 on the possessory offenses charged in counts four and five.

V.

Because we reverse defendant's conviction and remand for a new trial, it is unnecessary to address his argument that the court erred in its imposition of sentence.

We affirm the court's order denying defendant's motion to suppress evidence, reverse his convictions and remand for a new trial.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4443-16T4