# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4032-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MARK A. MARTIN, a/k/a
KELVIN GREEN,

     Defendant-Appellant.

_____

> Submitted February 3, 2020 – Decided March 9, 2020
>
> Before Judges Messano and Vernoia.
>
> On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 15-10-0688.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the brief).
>
> Charles A. Fiore, Gloucester County Prosecutor, attorney for respondent (Dana R. Anton, Senior Assistant Prosecutor, on the brief).

PER CURIAM

Following the denial of his motion to suppress evidence, defendant Mark A. Martin entered an open guilty plea to a Gloucester County indictment charging him with third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1); third-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(b)(3); third-degree possession of cocaine with intent to distribute within 1000 feet of a school, N.J.S.A. 2C:35-7; third-degree possession of Oxycodone, N.J.S.A. 2C:35-10(a)(1); and fourth-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(a).[1] Prior to sentencing, defendant moved to withdraw his guilty plea pursuant to State v. Slater, 198 N.J. 145 (2009). The trial court denied defendant's motion, and after appropriate mergers, the judge sentenced defendant to a mandatory extended seven-year term of imprisonment with a thirty-nine-month period of parole ineligibility, and a concurrent eighteen-month term of imprisonment on the certain persons offense.

Defendant raises the following points for our consideration.

POINT I

---

[1] "An 'open plea' [i]s one that d[oes] not include a recommendation from the State, nor a prior indication from the court, regarding sentence." State v. Kates, 426 N.J. Super. 32, 42 n.4 (App. Div. 2012) (citing State v. McDonald, 209 N.J. 549, 552 (2012), aff'd, 216 N.J. 393 (2014)).

THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SHOULD HAVE BEEN GRANTED DUE TO THE EIGHT-DAY DELAY IN EXECUTING AN EX PARTE TELEPHONIC TRO WARRANT AUTHORIZING AN IMMEDIATE SEARCH FOR WEAPONS.

POINT II

THE GUILTY PLEA SHOULD BE VACATED AND THE MATTER SHOULD BE REMANDED FOR A TRIAL.[2]

POINT III

THE SENTENCE IS EXCESSIVE.

Having considered these arguments in light of the record and controlling law, we affirm.

I.

On July 19, 2015, an East Greenwich Township Joint Municipal Court judge issued a temporary restraining order (TRO) pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, against defendant after his girlfriend alleged that defendant physically assaulted and verbally threatened her and her family. The contemporaneous notes taken by the judge indicated defendant's girlfriend believed defendant kept handguns in his house,

---

2 We have omitted the subpoints of this argument.

possibly in his closet. The TRO included a search warrant, see N.J.S.A. 2C:25-28(j), authorizing police to conduct a search of defendant's residence for weapons, "possibly in [the] bedroom closet hidden in clothing." The search warrant authorized police to conduct the search "immediately or as soon thereafter as is practicable."

Eight days later, an officer of the Woodbury Police Department served defendant with the TRO at his Woodbury residence. Defendant was taken into custody in his front yard pursuant to an outstanding, unrelated municipal warrant.[3] During the arrest, police obtained a key to defendant's residence from his pocket, and using this key, entered defendant's home to execute the search warrant provision of the TRO. Upon entry, police observed a throwing knife, drug paraphernalia, and suspected marijuana in the living room. In the front bedroom, police saw a razor blade and two dinner plates with a white powdery residue alongside a sealed bag containing a white powdery substance. A search of the bedroom closet revealed a plastic dish holding multiple pills, and other items consistent with the packaging and sale of drugs. Police also observed mail

---

[3] The court did not hold an evidentiary hearing on the motion to suppress. We recite the facts, which are apparently undisputed, as contained in the judge's written decision denying that motion.

4

addressed to defendant scattered within the front bedroom and throughout the remainder of the residence. They did not find any firearms.

Defendant filed a motion to suppress, alleging the TRO was granted on unsworn testimony, and police failed to execute the search warrant "in an exigent manner[,]" thus "vitiat[ing] its legitimacy and ultimately its legality." Following oral argument, the judge denied defendant's motion, explaining his reasons in a written decision.

On the day of trial, defendant indicated that he wished to accept a plea bargain previously offered by the State. Noting it was well past the plea cutoff date, the judge informed defendant that if he wished to plead guilty it would be an open plea to the indictment. The judge told defendant that he had spoken at length with defense counsel and the prosecutor about the reasonableness of the State's position on sentencing, but, he told defendant, "[t]he [c]ourt . . . is not involved in the resolution of the case by way of the conversations between counsel or negotiations." An extensive colloquy followed, which demonstrated defendant understood the maximum sentence for each offense, and that there was no plea agreement in place. Defendant provided a factual basis for each count of the indictment.

A-4032-17T4

Prior to sentencing, defendant moved to withdraw his guilty plea. After considering oral argument, the judge engaged in a detailed analysis of the Slater factors and denied defendant's motion. At sentencing, the judge found aggravating factors three (the risk that defendant will commit another offense); six (the extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted); and nine (the need for deterring the defendant and others from violating the law). N.J.S.A. 2C:44-1(a)(3), (6), and (9). The judge found no mitigating factors, N.J.S.A. 2C:44-1(b), and imposed the sentence noted above.

## II.

In Point I, defendant contends that the judge should have granted his motion to suppress because of the eight-day delay in execution of the search warrant. Defendant argues the delay was inconsistent with the language of the TRO, which required police to conduct the search "immediately or as soon thereafter as is practicable[,]" and the intent of the PDVA "that relief be available promptly." State v. Cassidy, 179 N.J. 150, 157 (2004) (citing N.J.S.A. 2C:25-18).

The State contends that defendant never raised the issue in the Law Division. Indeed, the delay argument was limited to a single sentence in

defendant's brief, and, at oral argument on the motion, substituted defense counsel did not raise the issue at all. As a result, the record is incomplete, and the judge's comprehensive written decision does not address this claim. The State hypothesizes that any delay may have resulted from the fact that the TRO was issued based upon the police response in one municipality, but service of the TRO and the search was conducted by a different police department. The State also contends that the PDVA provides no specific timeframe for execution of the search warrant authorized by the TRO, but Rule 3:5-5(a) provides a search warrant "must be executed within [ten] days after its issuance[.]" Here, the warrant was executed within eight days of its issuance.

"Appellate courts reviewing a grant or denial of a motion to suppress must defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015) (citing State v. Gamble, 218 N.J. 412, 424 (2014)). We do not, however, defer to the trial court's legal conclusions, which we review de novo. Id. at 263 (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

We begin with the proposition that a search executed pursuant to a warrant is presumptively valid and "a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant

or that the search was otherwise unreasonable.'" State v. Hamlett, 449 N.J. Super. 159, 169 (App. Div. 2017) (quoting State v. Jones, 179 N.J. 377, 388 (2004)). As the Court recently clarified in State v. Hemenway,

> before issuing a warrant to search for weapons under the [PDVA], a court must find that there is (1) probable cause to believe that an act of domestic violence has been committed by the defendant; (2) probable cause to believe that a search for and seizure of weapons is "necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought[]"; and (3) probable cause to believe that the weapons are located in the place to be searched.
>
> [239 N.J. 111, 117 (2019) (quoting N.J.S.A. 2C:25-28(f)).]

The PDVA requires a hearing to be held within ten days of the filing of a complaint when ex parte restraints were ordered in a TRO, N.J.S.A. 2C:25-29, but it is silent as to any time limits for executing the search warrant contained in the TRO. Certainly, we might presume that the Legislature intended any search conducted under the authority of the TRO would occur upon service of the TRO on defendant, by implication, within ten days of the issuance of the order. That would be consistent with the general rule regarding all search warrants. R. 3:5-5(a).

Notably, defendant does not specifically claim that the information in the search warrant that led to its issuance was "stale" eight days later when police

executed the warrant.  Cf. State v. Blaurock, 143 N.J. Super. 476, 479 (App. Div. 1976) (discussing staleness of probable cause leading to issuance of search warrant).  However, even the untimely service of a warrant does not "alone destroy its vitality . . . unless [a] defendant can show absence of probable cause at the time the warrant is executed or legal prejudice . . . caused by the delay."  State v. Carangelo, 151 N.J. Super. 138, 149 (Law Div. 1977).  "[T]imeliness and its converse, staleness, must be measured by the [n]ature and regularity of the allegedly unlawful activity."  United States v. Nilsen, 482 F. Supp. 1335, 1339 (D.N.J. 1980).  When that activity is of a continuous nature, such as here — defendant's possession of a firearm in his home — "the passage of time becomes less significant."  Blaurock, 143 N.J. Super. 479.  In short, we reject defendant's claim that the passage of eight days between the issuance of the TRO and the search of his home rendered the seizure of evidence found there unconstitutional.

## II.

In his second point, defendant argues that he should have been permitted to withdraw his guilty plea because he failed to provide an adequate factual basis, his guilty plea resulted from a material misrepresentation of the law, specifically, the effect of merger on his potential sentence exposure, and he

9

otherwise met the criteria in Slater. Only the Slater factors were advanced before the Law Division as a basis for the motion, however, we consider all the arguments and reject them.

Defendant contends that in his factual basis, he only admitted knowing the drugs and throwing knife were in his home, but not that he possessed them. See, e.g., State v. Spivey, 179 N.J. 229, 236 (2004) ("A person actually possesses an object when he has physical or manual control of it." (citing State v. Brown, 80 N.J. 587, 597 (1979))); id. at 236–37 ("A person constructively possesses an object when, although he lacks 'physical or manual control,' the circumstances permit a reasonable inference that he has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time." (quoting State v. Schmidt, 110 N.J. 258, 270 (1988))).

During the plea colloquy, defense counsel questioned his client. Defendant acknowledged "hav[ing]" the cocaine, and "intend[ing] to . . . share it with someone." Certainly, those statements imply the exercise of control and dominion over the drug. We also reject defendant's argument that his intention to "share" the drug was inadequate to prove possession with intent under State v. Morrison, 188 N.J. 2 (2006). In Morrison, the Court held that "the element

10

of 'intent to distribute' . . . cannot be established on the basis of the sharing of drugs between or among joint possessors." Id. at 17. However, there was no claim or evidence that defendant jointly possessed the drug with someone else.

Defendant also admitted that his home was within 1000 feet of an elementary school, he "had" the Oxycodone and did not have a prescription for the drug, and that the throwing knife was his. Defendant acknowledged that based upon a prior conviction he was "prohibited from possessing a weapon." While the factual bases admittedly should have been more extensive, they were adequate.

We also reject defendant's claim that his guilty pleas should be vacated because the court advised that if convicted of all charges his sentence exposure was twenty-six-and-a-half years, which failed to take into account the likely merger of certain offenses. However, "[m]isinformation provided to a defendant that is not material to the decision to plead guilty does not render a plea involuntary." State v. McQuaid, 147 N.J. 464, 487 (1997). In State v. Taylor, the defendant argued that he should have been permitted to withdraw his guilty plea because he was misinformed about the merger of certain offenses and, as a result, his potential maximum sentence exposure. 80 N.J. 353, 358–59 (1979). While recognizing that a defendant in fairness should be advised of "a

reasonable likelihood of merger," the Court rejected a per se rule requiring vacatur in the absence of such advice. Id. at 363. Instead, "[t]he Court endorsed the approach that the decision whether to permit a defendant to withdraw his plea should 'be decided on a case-by-case basis, depending upon whether the defendant can be said to have been prejudiced by the omission.'" McQuaid, 147 N.J. at 488 (quoting Taylor, 80 N.J. at 363).

Here, defendant acknowledged on the plea form that he had discussed the concept of merger with defense counsel. Additionally, later in colloquy with defense counsel, and in conjunction with reviewing defendant's answers on the "Supplemental Plea Form for Drug Offenses [,]" the judge noted "there may be some merger . . . here[,]" and that it could "impact[] the custodial provisions." The judge announced he was hand-writing on the plea form that counsel "reserves [the] right to argue merge[r,]" and did so.

Lastly, defendant contends he met the Slater standard for withdrawing a guilty plea prior to trial, particularly since there was no plea agreement and the State suffered no prejudice. The argument lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(2). We add only the following.

Slater established four factors for the court "to consider and balance in evaluating motions to withdraw a guilty plea." 198 N.J. at 157 Those are: "(1)

whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Id. at 157–58. "[A] plea may only be set aside in the exercise of the court's discretion." Id. at 156 (citing State v. Simon, 161 N.J. 416, 444 (1999)).

Defendant never asserted "a colorable claim of innocence" before the trial judge, who decided the asserted reasons were insufficient. The judge also noted that although this was an open plea bargain, the State had indicated what sentence it was likely to recommend and agreed to dismiss another indictment against defendant. Finally, the judge noted that while the State admittedly was not significantly prejudiced, defendant's withdrawal of guilty pleas entered on the day of trial would make it more difficult to once again muster proofs and assemble witnesses years after the events. The judge did not mistakenly exercise his discretion by denying the motion.

We affirm defendant's convictions.

### III.

Defendant asserts his sentence was excessive. While acknowledging that the court had to impose a mandatory extended-term sentence, see N.J.S.A.

13

2C:43-6(f), he argues the judge premised the findings of aggravating factors on defendant's prior criminal record, thereby "double-counting," and the judge failed to find mitigating factor twelve because defendant cooperated with law enforcement by pleading guilty.

"Appellate review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010) (citing State v. Jarbath, 114 N.J. 394, 401 (1989)). As part of our review, we must determine whether "the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record[.]" State v. Fuentes, 217 N.J. 57, 70 (2014). We will affirm the sentence if: "(1) the trial court followed the sentencing guidelines; (2) its findings of fact and application of aggravating and mitigating factors were 'based upon competent credible evidence in the record;' and (3) 'the application of the guidelines to the facts' of the case does not 'shock[] the judicial conscience.'" State v. A.T.C., 454 N.J. Super. 235, 254 (App. Div. 2018) (alteration in original) (quoting State v. Bolvito, 217 N.J. 221, 228 (2014)). Here, defendant did not challenge the aggravating factors found by the court at sentencing, nor did he urge application of any mitigating factors. Defendant's

14

prior convictions were numerous and fully supported the sentence imposed. We find no reason to disturb it.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4032-17T4