**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2697-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HASSAN M. CHERRY, a/k/a
CAMEL CHERRY,

    Defendant-Appellant.

_____

        Submitted June 3, 2020 – Decided July 6, 2020

        Before Judges Koblitz and Whipple.

        On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-02-0280, and Accusation Nos. 17-06-0576 and 18-08-0702.

        Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

        Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (Nancy Anne Hulett, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress evidence seized from his vehicle without a warrant after a motor vehicle stop, defendant Hassan M. Cherry was sentenced in accordance with a negotiated guilty plea to an aggregate term of eight years and four months imprisonment, subject to four years and two months of parole ineligibility.[1] Appealing the August 31, 2018 judgement of conviction, defendant raises the following argument:

---

[1] On February 23, 2016, defendant was charged by a Middlesex County Grand Jury under Indictment Number 16-02-0280 with third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10a(1) (count one); third-degree possession with intent to distribute cocaine in a quantity of less than one-half ounce, N.J.S.A. 2C:35-5a(1) and 2C:35-5b(1) (count two); fourth-degree possession with intent to distribute marijuana in a quantity of less than one ounce, N.J.S.A. 2C:35a(1) and N.J.S.A. 2C:35-5b(12) (count three); fourth-degree resisting arrest, N.J.S.A. 2C:29-2a(2) (count four); and third-degree resisting arrest, N.J.S.A. 2C:29-2a(3) (count five). In addition, defendant was also charged under Accusation Number 17-06-0576, with third-degree possession of a CDS with the intent to distribute, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3). Defendant agreed to plead guilty to count two under 16-02-0280 and the sole count in 17-06-0576. The State agreed to recommend 100 months in prison with fifty months of parole ineligibility, on each charge, with the sentences to run concurrently.

On August 24, 2018, defendant was charged under Accusation Number 18-08-0702 with fourth-degree resisting arrest, N.J.S.A. 2C:29-2a(2). On that same day, defendant was sentenced in accordance to the plea agreement on count two under 16-02-0280 and the sole count in 17-06-0576. Defendant also pled guilty to the sole charge under 18-08-0072 and was sentenced to a term of

POINT I

THE DRUGS FOUND IN DEFENDANT'S VEHICLE SHOULD BE SUPPRESSED BECAUSE THE POLICE UNLAWFULLY DETAINED THE VEHICLE WHEN THEY REFUSED TO ALLOW DEFENDANT TO CALL FOR SOMEONE TO DRIVE THE VEHICLE FROM THE SCENE OF THE MOTOR VEHICLE STOP.

After reviewing the record and the applicable legal principles, we affirm.

We discern the following facts from the transcript of the suppression hearing. Officer Rafael Marinho of the Woodbridge Police Department testified for the State. On October 27, 2015, Marinho was on patrol working a night shift with Officer Dorward. Although both officers were in an unmarked car, they were both in uniform. During the patrol, they observed a 2014 Dodge in the Port Reading area. According to Marinho, Dorward observed the Dodge pass through a stop sign. Marinho ran a mobile data terminal lookup and learned that the registered owner of the vehicle had a suspended license.

The officers did not attempt to initiate a motor vehicle stop at that time because of the distance between the patrol car and defendant's vehicle as well as the speed at which defendant's vehicle was traveling. The officers also did not

eighteen months imprisonment, concurrent with the sentence previously negotiated.

A-2697-18T1

activate the lights on their patrol vehicle because they feared defendant's vehicle would flee, increasing the distance between the vehicles, and creating "more of a road hazard by way of a high-speed chase."

They followed the vehicle to a nearby gas station. The officers maintained surveillance of the vehicle and noticed the driver of the Dodge, later identified as defendant, approach a vehicle that was occupying one of the pumps at the gas station, reach inside the vehicle, and "conduct[] an exchange for a brief period" before returning to his vehicle and leaving the scene.

Marinho perceived the encounter to be a drug transaction because the vehicle that was parked at the pump drove away, without getting gas. The officers waited for defendant to leave the gas station in his vehicle so they could effectuate a motor vehicle stop because the officers felt it was unsafe to conduct the stop at the gas station. Defendant left the station, and the officers stopped him a short time later.

Dorward asked defendant for his driving credentials. Defendant responded by stating, "I know my license is suspended," and asking "[i]s there any way I can get my vehicle out of here? Can I call somebody to retrieve my vehicle?" The officers told defendant he could not call someone to retrieve the vehicle because they "had some suspicion that [defendant] could have engaged

in . . . illegal activity" and may "be trying to get rid of this vehicle due to some kind of contraband being within the vehicle."

Although defendant eventually provided his driving credentials, Marinho observed that defendant made no eye contact with Dorward, was breathing heavily, and appeared to be nervous as "his carotid artery [was] beating excessively." Because Marinho suspected there could be contraband in the vehicle, he asked defendant to exit the car and go towards the trunk. Marinho then asked defendant where he was coming from and defendant stated he was coming from his friend's house, a person Marinho believed sold drugs. Eventually, defendant admitted he was coming from the gas station but denied meeting anyone there. Marinho thought defendant's statements were untrue and watched defendant pick up his cell phone to attempt "to get somebody to retrieve his vehicle."

Marinho told defendant to hang up the phone as his car was not going to be released to anyone and that he was free to leave once a summons was issued but his car had to remain on the scene. Defendant continued to call, despite orders from Marinho to "hang up," and he told someone: "You need to come pick up my vehicle." Marinho testified that he was unsure as to whether defendant was calling for someone to retrieve his vehicle or for some other

reason and demanded defendant hang up the phone or be arrested for obstruction.

Marinho testified that defendant refused to hang up the phone and fled the scene on foot. Marinho chased defendant while Dorward stayed by defendant's vehicle and waited for backup to arrive. Marinho as well as other officers, who later arrived on the scene, apprehended defendant but defendant refused to stop resisting keeping his hands underneath his waist. Eventually, defendant was handcuffed and searched, resulting in the officers finding $498 in small bills on his person. Marinho testified that his training and experience led him to believe the money recovered suggested defendant was engaging in "some kind of drug distribution."

Defendant was transported to the station for processing while a K-9 unit responded to the scene of the vehicle. The dog reacted at both the driver and passenger sides. The officers, without a warrant, searched the vehicle retrieving approximately fourteen marijuana baggies and thirty-three cocaine baggies at the scene.

The motion judge found Marinho was a credible witness, determined the stop initiated by the officers was "valid based on the motor vehicle infractions observed," and probable cause existed to search the vehicle for contraband based

A-2697-18T1

on "the subsequent hand-to-hand transaction that [the officers] observed . . . defendant engage[] in."

The judge found sufficient evidence to "support a reasonable, well-grounded suspicion that a motor vehicle infraction had occurred and was committed by the driver of that particular vehicle." See State v. Scriven, 226 N.J. 20, 33-34 (2016) ("Under the Fourth Amendment and Article I, Paragraph 7 [of the New Jersey Constitution], ordinarily, a police officer must have a reasonable and articulable suspicion that the driver of the vehicle . . . commit[ed] a motor-vehicle violation . . . to justify a stop.") (citation omitted). The court noted the officers observed "defendant driv[e] through a stop sign without stopping" which "led to a mobile data terminal search by the officers [that] reveal[ed] . . . the registered owner of the vehicle, presumably the defendant who had been driving, had his license suspended."

The judge also found probable cause existed to search the vehicle for contraband as the officers' "[s]ubsequent observation of the defendant enhanced suspicions [regarding] . . . defendant's criminal behavior more specifically as it related to the CDS distribution activity based on what they observed the defendant doing at the gas station." According to the judge, the search was constitutional under the automobile exception. See State v. Rodriguez, 459 N.J.

Super. 13, 20 (App. Div. 2019) (noting the "automobile exception" is an exception to the warrant requirement).

On appeal, defendant only challenges the unreasonable detention and search of his vehicle. He argues the drugs found during the search of his vehicle should be suppressed because defendant readily admitted his driver's license was suspended and it was unreasonable to interrogate him about "where he had been and what he had done, while also preventing him from . . . arrang[ing] to have his vehicle driven from the scene." Defendant asserts the officers questioning was not reasonably related to the reason for the stop and therefore, the officers' failure to issue him a citation and let him continue on his way violated his right to be free from an unreasonable seizure.

When we review a court's decision on a motion to suppress, we defer to the court's factual and credibility findings "so long as those findings are supported by sufficient credible evidence in the record." State v. Hamlett, 449 N.J. Super. 159, 169 (App. Div. 2017) (quoting State v. Handy, 206 N.J. 39, 44 (2011)). We defer to the findings of the trial judge because his or her findings "'are substantially influenced by . . . [the] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Reece, 22 N.J. 154, 166 (2015) (quoting State v. Locurto, 157

N.J. 463, 471 (1999)).  However, we afford no deference to the trial court's legal conclusions, which we review de novo.  State v. Gandhi, 201 N.J. 161, 176 (2010).

It is well-established that the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution require police to obtain warrants before making searches and seizures.  "Warrantless searches and seizures are presumptively invalid unless the State shows the search was justified under one of the specific judicially recognized exceptions to the warrant requirement."  Rodriguez, 459 N.J. Super. at 20 (citation omitted).

In State v. Witt, 223 N.J. 409 (2015), the Court recognized the "multi-factor exigent circumstance test" was "too complex and difficult for a reasonable police officer to apply to fast-moving and evolving events that require prompt action."  Id. at 414-15.  The Court announced a bright-line rule governing the construction of the automobile exception to the warrant requirement.  Id. at 447-48.  Witt prospectively reinstated the test established in State v. Alston, 88 N.J. 211 (1981) and authorized automobile searches in situations where: "(1) the police have probable cause to believe the vehicle contains evidence of a criminal offense;  and  (2)  the  circumstances  giving  rise  to  probable  cause  are

unforeseeable and spontaneous." Rodriguez, 459 N.J. Super. at 22 (citing Witt, 223 N.J. at 447-48).[2]

With these principles in mind, we agree the police executed a constitutional, warrantless search of defendant's vehicle. Prior to the officers lawfully stopping defendant because of his motor vehicle infractions, the officers witnessed defendant pull into a gas station and conduct what the officers reasonably suspected, based on their prior training and experience, to be a drug transaction. When the officers executed the stop of defendant's vehicle, defendant's conduct, enhanced, rather than allayed, the officers' suspicions that there were drugs in the vehicle. Specifically, the officers' suspicions were further heightened by defendant's untruthful answers to the officers' questions, his nervousness—lack of eye contact, heavy breathing, and visible carotid artery—and his refusal to listen to the multiple commands to hang up his phone as the officers denied his request to call someone to pick up his vehicle.

Moreover, defendant's stop was prolonged by the fact that he fled the scene on foot, which compelled the officers to arrest him and conduct a search incident to arrest that revealed defendant had a large amount of cash on his

_____

[2] The trial court made factual findings regarding the exigency of the officers' search of defendant's vehicle. Since the search occurred after the Witt decision, we analyze the matter under the Witt framework.

A-2697-18T1

person. The defendant's flight as well as the amount of cash recovered added to the totality of the circumstances, which vested the officers with probable cause to believe that defendant was participating in drug activities and had contraband in his vehicle. After defendant's arrest, a police dog reacted positively to both sides of defendant's vehicle, confirming the presence of drugs in the car and further contributing to the probable cause needed to conduct a search of defendant's vehicle.

We reject defendant's argument that the officers unlawfully detained the vehicle when they refused to permit defendant to call and have someone retrieve the car from the roadway. The requirements of the automobile exception as set forth in Witt were established in this case, as probable cause existed and the circumstances giving rise to the search were also clearly unforeseen and spontaneous. We conclude there was sufficient credible evidence in the record to support the court's factual findings and agree with the judge's legal conclusions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11